**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IZZA LOPEZ, a/k/a RAUL LOPEZ, JR.** | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 06-3999** |
| **vs.** | § | |
| | § | |
| **RIVER OAKS IMAGING AND** | § | |
| **DIAGNOSTIC GROUP, INC.,** | § | |
| **Defendant.** | § | |

---

**DEFENDANT RIVER OAKS IMAGING AND DIAGNOSTIC GROUP, INC.'S
MOTION FOR FINAL SUMMARY JUDGMENT**

---

Howard T. Dulmage
Fed. ID No. 28826
State Bar No. 24029526
MCCORMICK, HANCOCK & NEWTON
1900 West Loop South, Suite 700
Houston, Texas  77027-3206
Telephone:  (713) 297-0700
Telecopier:  (713) 297-0710

**ATTORNEY FOR DEFENDANT,
RIVER OAKS IMAGING AND
DIAGNOSTIC GROUP, INC.**

Filed: December 7, 2007

## TABLE OF CONTENTS

**NATURE AND STAGE OF THE PROCEEDING** ........................................................ 1

**BASIS FOR MOTION** ............................................................................................... 1

**FACTS** ...................................................................................................................... 2

**SUMMARY JUDGMENT EVIDENCE** ...................................................................... 5

**SUMMARY OF THE ARGUMENT** ........................................................................... 6

**ARGUMENT AND AUTHORITIES** ........................................................................... 7

    A.  Summary Judgment Standard ............................................................................ 7

    B.  Plaintiff's Burden In Title VII Cases ................................................................ 8

    C.  Defendant Articulates Legitimate Reason For Adverse Action .......................... 9

    D.  Transgender Not Protected Class ..................................................................... 9

    E.  Further Authority--Transgender Is Not A Protected Class Under

        Title VII .................................................................................................... 11

      *i.* Lopez's Own Testimony Proves Lopez's Only Real Claim Arises From
      Lopez's Transgender Status .................................................................... 12

    F.  Lopez Not Qualified For The Job ................................................................... 13

    G.  Sexual Stereotyping ...................................................................................... 15

    H.  River Oaks Had Legitimate Reason—No Pretext Under Stereotyping ............. 18

**CONCLUSION** ........................................................................................................ 23

# TABLE OF AUTHORITIES

## Cases

*Alvarado v. Texas Rangers*, 492 F.3d 605 (5th Cir. 2007) .................................. 8, 9, 14, 23

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ....................................................... 8

*Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir. 2005)......................................... 15, 16

*Bibby v. Philadelphia Coca Cola Bottling Co*., 260 F.3d 257 (3d Cir. 2001) .................. 15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................... 8

*Crawford v. Farmosa Plastics Corp.*, 234 F.3d 899 (5th Cir. 2000)................................ 20

*Davis v. Dallas Area Rapid Transit*, 383 F.3d 309 (5th Cir. 2004).................................... 8

*Doe by Doe v. City of Belleville*, 119 F.3d 563 (7th Cir. 1997)........................................ 15

*Elliot v. Group Medical & Surgical Service*, 714 F.2d 556 (5th Cir. 1983)..................... 19

*Etsitty v. Utah Transit Authority*, 502 F.3d 1215 (10th Cir. 2007)........................... passim

*Flock v. Scripto-Tokai Corp.*, 319 F.3d 231 (5th Cir. 2003) ............................................. 8

*Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252 (1st Cir. 1999)..................... 15

*Holloway v. Arthur Andersen & Co.*, 566 F.2d 659 (9th Cir. 1977)................................ 11

*Landrgaf v. USI Film Products*, 511 U.S. 244.................................................................. 16

*Lawrence v. University of Texas Med. Branch at Galveston*, 163 F. 3d 309 (5th Cir. 1999)
.................................................................................................................................... 19

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) .................................................... 7

*Manning v. Chevron Chem. Co.*, 332 F.3d 874 (5th Cir. 2003) ......................................... 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 ..................................... 8

*Nichols v. Azteca Rest. Enters.*, 256 F.3d 864 (9th Cir. 2001) ........................................ 15

*Oiler v. Winn-Dixie Louisiana, Inc.*, 2002 U. S. Dist. LEXIS 17417 (E.D. Louisiana
2002) ....................................................................................................................... 11, 17

*Oncale v Sundowner Offshore Services, Incorporated*, 523 U.S. 75............................... 18

*Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989) .......................................................................................................... 15, 16, 18, 22

*Ray v. Tandem Computers, Inc.*, 63 F.3d 429 (5th Cir. 1995)........................................... 19

*Roberson v. Alltel Information Serv.*, 373 F.3d 647 (5th Cir. 2004) ................................ 19

*Smith v. City of Salem, Ohio*, 378 F.3d 566 (6th Cir. 2004) ..................................... passim

*Smith v. Liberty Mutual Ins. Co.*, 569 F.2d 325 (5th Cir. 1978)....................................... 16

*Sommers v. Budget Mktg., Inc.*, 667 F.2d 748 (8th Cir. 1982) ......................................... 11

*Sreeram v. Louisiana State Univ. Med. Center-Shreveport*, 188 F.3d 314 (5th Cir. 1999) ........................................................................................................................................ 8, 9

*Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081 (7th Cir. 1984)................................. 11, 16

## Statutes

42 U.S.C.S. § 2000e, et seq................................................................................................ 6

Civil Rights Act of 1964 ("Title VII")............................................................................... 1

## Rules

Rule 56(c)........................................................................................................................... 7

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now Defendant River Oaks Imaging and Diagnostics Group, Inc. ("River Oaks" or "Defendant") and files this motion for full and final summary judgment against all claims of Raul Lopez, Jr. a.k.a Izza Lopez ("Lopez" or "Plaintiff").

## NATURE AND STAGE OF THE PROCEEDING

1.      Plaintiff alleges that Defendant engaged in transgender and sexual stereotyping discrimination against Plaintiff in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").   The parties have completed all necessary discovery for dispositive motions including the Plaintiff's deposition and seven of the Defendant's employees or former employees' depositions. Defendant moves for full and final summary judgment in accordance with Federal Rule of Civil Procedure 56.

## BASIS FOR MOTION

2.      Plaintiff Lopez alleges River Oaks discriminated by rescinding a job offer because she is transgender.  Defendant withdrew the offer, pursuant to written notice both in the application and the conditional offer letter, after River Oaks realized Lopez had misrepresented his real name and sex during the interview process. Lopez cannot prove the essential elements of Lopez's claims because, as a trangender person, she is not a member of a protected class.  Lopez admits she was not discriminated against because he is a man or because she is a woman.  Hence, Lopez has no evidence of any wrongful conduct prohibited under the law.  River Oaks exercised its right under the Texas *at-will* doctrine.  As a result, Defendant River Oaks is entitled to summary judgment on all of Plaintiff's claims.

1

## FACTS

3.     River Oaks is a local medical imaging center providing radiological services to patients at several locations throughout the Houston metropolitan area. River Oaks' main office is located at 3000 Richmond and many of the scheduler work at this address.

4.     The schedulers are responsible for dealing with confidential patient information and scheduling various patient procedures. Ex. B at 15; Ex. D at 17. In order to accomplish these tasks, the scheduler must deal with physicians, patients and other persons in the healthcare industry. River Oaks employs several schedulers. Ex. B at 16.

5.     During the Fall of 2005, River Oaks was hiring schedulers. Two River Oaks schedulers Marissa Samaniego ("Samaniego) and Maria Granados ("Granados") recommended that Lopez, a friend of theirs from a previous job, apply to River Oaks. Ex. B at 26; Ex. H at 26. Both women knew Lopez saw himself as a woman assigned male anatomy at birth *i.e.* trangender.[1] Ex. D at 27 and 33. Both Samaniego and Granados suggested River Oaks to Lopez because they felt like River Oaks was very open-minded and did not discriminate. Ex. D at 33-34; Ex. H at 28-29.

6.     Samaniego in a passing conversation mentioned to her department head Maddy Williams ("Williams") that she had a friend named Izza Lopez that was applying as a scheduler and she told Williams that Lopez was a "he/she." Ex. D at 41. However, Samaniego is not sure Williams understood the significance of the comment. *Id.* at 60. Williams testified that she did not know. Ex. D at 35.

---

[1] This is the basic definition the Plaintiff and his counsel have proffered. *See* Plaintiff's Complaint. Out of respect for Lopez, but without waiving it's rights to argue otherwise, Lopez will be referred to as "she" in this motion and was so referred to in the depositions by agreement. Ex. A at 4 and 97.

7.     Granados spoke to Tameka Dixon ("Dixon").  Ex. B at 26.  Dixon is the number two person in the scheduling department.  Ex. H at 29.  Dixon knew Lopez was transgender but thought Lopez had completed the process.  She did not tell anyone including Williams anything about Lopez's status.  Ex. B at 30 and 41.

8.     There is no dispute that Lopez did not tell anyone she interviewed with that she was a transsexual or transgender.  Ex. A at 167; Ex. H at 39.  Both her references and friends Samaniego and Granados advised her that she needed to fully disclose her situation during the interview.  Ex. H at 40.  Lopez also did not tell Williams and Dixon her real name was "Raul Lopez, Jr."

9.     Lopez applied in mid-September 2005.  Lopez had her interview rescheduled due to the Hurricane Rita evacuation.  Ex. A at 43-44.  Lopez finally interviewed on September 27, 2005.  Ex. A at 46.  During the application and interview process, Lopez dealt with Elle Palugna ("Pallugna"), River Oaks' HR Generalist. Ex. E at 27; Ex. E at 13; Ex. A at 42-45.

10.    Lopez applied as "Izza" on both her resume and application and noted "Raul" in parenthesis on the application, but did not make it clear her legal name was "Raul Lopez, Jr."  Ex. E at 50.  Lopez was dressed and appeared as a woman during the day of her interview.  Ex. A at 292-293.  The application made it clear employment was *at-will* and that any omission, incomplete statement, misrepresentation, misleading statement or false statement was grounds for rejection or termination if discovered later.  Ex. A - ROI0008.

11.    Lopez was interviewed by Williams and Dixon.  Ex. A at 47; Ex. C at 31; Ex. B at 37. Both recommended to HR that Lopez be hired as a scheduler not knowing

Lopez was violating policy by misrepresenting her legal status or her real name.  Ex. C at 32; Ex. E at 33.

12.     River Oaks had, and has, a strict policy regarding disclosure and truthfulness during the applications process.  Ex. G at 30.  In fact, River Oaks has fired many employees for putting false or incomplete information on their applications.  Ex. F at 109-110.

13.     Pallugna started to process the paperwork so Lopez could be scheduled for a drug test and background check.  Ex.  E at 34; Ex. A at 58.  She sent Lopez a conditional offer letter.  Ex. A- ROI 009. Lopez sent in the background check form to Pallunga and put "Raul Lopez" and "Izza Lopez" on it.  Ex. A at 59-60.  Pallugna did not fully appreciate the inconsistency at the time.  Ex. E at 50.

14.     Accordingly, Pallugna called Lopez to find out when she could start. Ex. A at 66. Lopez then notified her employer that she was giving two weeks notice.  Ex. A at 67- 68.

15.     Shortly thereafter, Pallugna gave Lopez's package to HR Manager Cherrone French ("French"), as she did with all new hires.  Ex. E at 81.  In reviewing it, French noticed that Lopez's name, resume and background check were inconsistent; and while River Oaks thought she was female, Lopez's background check stated she was a male.  Ex. A – depo ex. 1 and depo ex. 2; Ex. E at 84; Ex. F at 36.

16.     French consulted with CFO Marty Jimmerson ("Jimmerson"). In keeping with River Oaks policy, Jimmerson instructed French to rescind the job offer.  French and Pallugna followed Jimmerson's instructions.  Ex. F at 38; Ex. G at 17; Ex. F at 66.

17.     Pallunga notified Lopez by telephone.  Ex. A at 69.  Lopez asked for a letter and it was provide.  Ex. A at 71-72 and Ex. A depo ex. 5.

18.     Lopez went back to her current employer and advised she wanted to rescind her resignation; but the employer, Diagnostic Clinic, refused to allow her to remain.  Ex. A at 78-79.

19.     As a result, Lopez became unemployed.  Ex. A at 79.  Lopez filed a charge of discrimination with the EEOC alleging sex and racial discrimination.  Ex A depo ex. 6.

20.     Lambda Legal agreed to represent Lopez and filed suit on her behalf.[2]  *See* Original Complaint. Since filing suit, Lopez has sought media attention.  Ex. A at 237.

## SUMMARY JUDGMENT EVIDENCE

Exhibit "A"- Deposition of Izza Lopez aka Raul Lopez, Jr.

Exhibit "B"- Deposition of Tameka Dixon

Exhibit "C"- Deposition of Maddy Williams

Exhibit "D"- Deposition of Marissa Samaniego

Exhibit "E"- Deposition of Elle Pallugna

Exhibit "F"- Deposition of Cherrone French

Exhibit "G"- Deposition of Martin Leon Jimmerson, Jr.

Exhibit "H"- Deposition of Maria Granados

---

[2] Lambda Legal is a gay, lesbian and transgender rights organization that provides legal service to the aforementioned groups.  Lambda has engaged in litigation around the country trying at least in part to further it's causes through litigation.  Unfortunately for the employer, they can find themselves in litigation in which press releases by Lambda are sent out and in which typical resolution economics may not apply.

## SUMMARY OF THE ARGUMENT

21.     Lopez seeks relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e, *et seq.* (hereinafter "Title VII") for transgender discrimination and sex discrimination based on prohibited sexual stereotyping.  Lopez's must establish under the *McDonnell Douglas* model a *prima facie* case of: (1) that the she is a member of a protected class; (2) that she was at all times qualified for the position at issue; and (3) that the River Oaks made an adverse employment decision despite her qualifications.  Lopez fails on points one and two.

22.     First, Lopez cannot show that she is a member of a protected class as transgender person.  Indeed, Lopez admits that her whole case arises only because she is transgender and that she has no evidence that River Oaks discriminated against her because she is either a man or a woman.   Second, because Lopez made material misrepresentations during the application process, she cannot show she was qualified under River Oaks strict policy of applicant full-disclosure and honesty during the interview process.  A policy River Oaks is entitled to under the Texas *at-will* doctrine.

23.     Almost all federal courts that have had occasion to rule on transgender cases have held that transgender is not a protected class under Title VII.  While the Fifth Circuit has not ruled specifically on this point, there is no reason to believe the Fifth Circuit would go against the weight of the other federal courts on this issue considering no clear signal or authority from Congress; and considering the Fifth Circuit's overall employment law jurisprudence.

24.     While Lopez tries to bootstrap a sexual stereotyping claim from the *Price Waterhouse* line of cases, she fails.  Lopez makes the novel claim that River Oaks

unreasonably expects that no females will have male anatomy.  Therefore, River Oaks has engaged in prohibited sexual stereotyping.  Again, she admits that her real dispute is because she is transgender and not because River Oaks discriminates against men or women.

25.     Assuming *arguendo* Lopez could make a prima facie case, River Oaks articulates a legitimate non-discriminatory reason for not hiring Lopez.  Accordingly, summary judgment is appropriate unless Lopez can prove that River Oak's rational is pretextual.  On this, Lopez has no evidence beyond Lopez's subjective belief, which is not sufficient to raise an issue of fact.  Indeed even Lopez's two friends who recommended Lopez apply to River Oaks testified that River Oaks does not discriminate.  Interestingly, they warned Lopez to be completely open about Lopez's status during the interview process.  Had Lopez simply told the truth, Lopez would be working at River Oaks today.

26.     Lopez has no evidence that she was discriminated against because he is a man or because she is a woman.  River Oaks has offered ample evidence that it made a legitimate decision not to hire Lopez because it felt like she did not follow its policies during the application process.  Lopez has no evidence to prove otherwise.

## ARGUMENT AND AUTHORITIES

### A.     Summary Judgment Standard

27.     Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  "The substantive law will

identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes about material facts will preclude the granting of summary judgment. *Id.*

28.     In making its determination, the Court views all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in that party's favor. *Flock v. Scripto-Tokai Corp.*, 319 F.3d 231, 236 (5th Cir. 2003). The Court will grant a defendant's motion for summary judgment if there is no evidence to support an essential element of the plaintiff's claim, but the burden is on the defendant to prove that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

29.     Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to material facts,' . . . by conclusory allegation,' . . . by unsubstantiated assertions,' or by only a scintilla' of evidence.") *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (emphasis in original) (quoting FED. R. CIV. P. 56(e)).

**B.     Plaintiff's Burden In Title VII Cases**

30.     The *McDonnell-Douglas* burden shifting standard for both discrimination and retaliation claims under Title VII in the Fifth Circuit is well-settled. *See, e.g.*, *Alvarado v. Texas Rangers*, 492 F.3d 605 (5th Cir. 2007), 611-12; *Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 319 (5th Cir. 2004); Manning v. Chevron Chem. Co., 332 F.3d 874, 881 (5th Cir. 2003)*; *Sreeram v. Louisiana State Univ. Med. Center-Shreveport*, 188 F.3d 314, 317 (5th Cir. 1999). The plaintiff bears the initial burden of proving a

prima facie case of discrimination by a preponderance of the evidence. A prima facie case is established by proving: (1) that the plaintiff is a member of a protected class; (2) that she was at all times qualified for the position at issue; and (3) that the defendant made an adverse employment decision despite the plaintiff's qualifications and (4) others similarly situated but outside the protected class were treated more favorably. *Alvarado*, 492 F.3d at 611-12; *Sreeram*, 188 F.3d at 317.

## C.    Defendant Articulates Legitimate Reason For Adverse Action

31.    If the plaintiff establishes the prima facie case then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Alvarado*, 492 F.3d at 611-12.  The burden on the employer at this stage is one of production, not persuasion; it can involve no credibility assessment. *Id.*  If the employer sustains its burden, the prima facie case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another motivating factor" is the plaintiff's protected characteristic. *Id.*

## D.    Transgender Not Protected Class

32.    On September 20, 2007, the United States Court of Appeals for the Tenth Circuit affirmed summary judgment in a case both factually and legally similar to Lopez's claims against River Oaks in this case. *Etsitty v. Utah Transit Authority*, 502 F.3d 1215 (10th Cir. 2007).  Like Lopez, Etsitty brought suit for transgender discrimination and prohibited sexual stereotyping.

33.    Krystal Etsitty was a bus driver for the Utah Transit Authority ("UTA") in Salt Lake City.  *Etsitty*, 502 F.3d at 1219.  He began to wear make up jewelry, taking

hormones and planned a sex change after he saved enough money.  *Id.*  Etsitty also began using the women's restrooms along his bus route.  Despite his being an otherwise excellent employee, UTA was concerned about his use of the women's restrooms and the liability it might cause.  *Id.*  So, UTA ultimately fired Etsitty and explained the reason was its concern about liability over his use of the woman's restroom on his bus routes. *Id*.  Etsitty was eligible for rehire after he completed his transition.  *Id.*  Coincidentally, Lambda Legal Defense and Education Fund, Inc. was a part of Etsitty's legal team.  *Id.* at 1215.

34.     The Tenth Circuit affirming summary judgment held there is no Title VII protection for a transgender class.  *Id.* at 1222.  The court reviewed the jurisprudence around the nation on this point.  *Id.* at 1220-22.  The *Etsitty* court also found that UTA's concerns about liability for a transgender male employee using women's restrooms was a legitimate reason for termination.  *Id.* at 1224. Etsitty was unable to raise a fact issue that UTA's reason for termination was a pretext.  *Id.* at 1226.

35.     This is similar to the Lopez case.  All of Lopez's claims arise from Lopez's status as transgender.  To the extent Lopez seeks to bring a claim for prohibited sexual stereotyping before this Court, Lopez has no evidence.  River Oaks made a legitimate employment decision under Texas' at-will doctrine to rescind the conditional job offer after learning Lopez had not been completely truthful during her interview.[3] While some may not like River Oaks' decision, River Oaks did not make the decision out

---

[3] Texas' has long adhered to the employment "at will" doctrine.  *Spuler v.* Pickar, 958 F.2d 103 (5th Cir. 1992); *East Line & Red River Ry. Co. v. Scott*, 10 S.W. 99 (Tex. 1988); *Wornick Co. v. Casas*, 856 S.W.2d 732, 735 (Tex. 1993); *see also  Crenshaw v. Gen. Dynamics Co.*, 940 F.2d 125 (5th Cir. 1991); *White v. FCI USA, Inc.*, 319 F.3d 672, 676 (5th Cir. 2003); *Spuler v. Pickar*, 958 F.2d 103, 106 (5th Cir. 1992); *Crenshaw v. Gen. Dynamics Corp.*, 940 F.2d 125, 128 (5th Cir. 1991).  .

of any discriminatory animus towards transgender persons, their unprotected status notwithstanding, and River Oaks clearly did not engage in prohibited sexual stereotyping. River Oaks merely exercised its right under the at-will doctrine, the notice in both the application and the conditional offer letter, and decided not to hire Lopez after it determined she gave inconsistent information in her application package.

**E.      Further Authority--Transgender Is Not A Protected Class Under Title VII**

36.      While the Fifth Circuit has not specifically ruled on a transgender case, the other circuits to address the issue have consistently held that transgender is not a protected class under Title VII.  *Etsitty*, 502 F.3d at 1221 (*citing Ulane v. Eastern Airlines, Inc., 742 F.2d 1081, 1084 (7th Cir. 1984)*; *Sommers v. Budget Mktg., Inc., 667 F.2d 748, 749-50 (8th Cir. 1982)*; *Holloway v. Arthur Andersen & Co., 566 F.2d 659, 662-63 (9th Cir. 1977)*.  One sister district court in the Fifth Circuit did a detailed analysis of Congressional intent regarding this issue and found that Congress has had many opportunities to amend Title VII to include transgender persons, but has chosen not to.  *Oiler v. Winn-Dixie Louisiana, Inc*., 2002 U. S. Dist. LEXIS 17417 (E.D. Louisiana 2002) (more on *Oiler infra*).

37.      In *Ulane v. Eastern Airlines*, a pilot decided he wanted to have a sex change and Eastern Airlines terminated his employment*,* the Seventh Circuit held that discrimination against someone based on their transgender or transexual status does not fall under the ambit of Title VII protection.  742 F.2d at 1084-86.  The definition of sex should be given its "common and traditional interpretation" for purposes of interpreting Title VII.  *Id. at 1086*.  Therefore it is only "unlawful to discriminate against women because they are women and men because they are men." *Id. at 1085*.  Because Ulane

11

could only show that he was discriminated against as a transsexual, rather than as a woman or a man, the court concluded Title VII could provide no protection. *Id. at 1086-87.*

38.  The *Etsitty* Court agreed "with *Ulane* and the vast majority of federal courts to have addressed this issue and concluded discrimination against a transsexual based on the person's status as a transsexual is not discrimination because of sex under Title VII." *Etsitty* at 1221.

*i.*  **Lopez's Own Testimony Proves Lopez's Only Real Claim Arises From Lopez's Transgender Status**

39.  Lopez's own testimony demonstrates this case is nothing more than an attempt to expand the law through judicial action.  Lopez acknowledges the only real complaint is because of her transgender status.

> Q:  Well, you've already told me that nobody discriminated against you because you were a man.  You've already told me that nobody discriminated against you because you were a woman.  The only reason they discriminated against you is because you're presenting yourself as a woman when, in fact, you are a man, i.e., transgender.  Correct?
> A:  Correct.

Ex. A at 228.

40.  Lopez acknowledges in several places in her deposition this whole matter is about being in transition or transgender:

> Q:  Okay.  So the whole deal is you were in transition?
> A:  Correct.

Ex. A at 247.

> Q:  Okay.  Now, is there another class other than man or woman that you believe you're in?  ***
> A:  No.  Right now transgender status.

Ex. A at 251-252.

> A:  Of wrong – of the wrongdoing that was done to me.
> Q:  That you weren't hired because you're transgender?
> A:  Correct.

Ex. A at 258.

41.     It is clear from Lopez's testimony that Lopez's only real complaint is she was somehow discriminated against because she is transgender.  Yet, transgender is not a protected class under Title VII.  Therefore on this alone, Lopez cannot make out a prima facie case for discrimination.

**F.      Lopez Not Qualified For The Job**

42.     One of River Oaks' employment conditions or qualifications for all of its employees was, and still is, accuracy and consistency in the information provided on the application.  Ex. G at 35.  This required full disclosure and honesty during the application process.  Ex. F at 38-39, 108; Ex. A ROI 0008.  This is a policy that was well-established by the management at the time Lopez interviewed.  Ex. F at 128; Ex. F at 202.  River Oaks has fired several employees for application omissions or misrepresentations.  Ex. F at 109-110.  River Oaks would have hired Lopez had she put her full legal name on the application and disclosed her transgender status.  Ex. F at 138; Ex. G at 39, 54.   Lopez chose the path of inconsistency, misrepresentation and thereby failed to demonstrate that she met the same qualifications of trust and honesty River Oaks demanded from all its other employees.

43.     Lopez acknowledges that she filled out and understood the standard River Oaks application which contained the following language:

> **I certify that answers given herein are true and complete.**  I authorize River Oaks Imaging and Diagnostic

> (hereinafter referred to as "ROID") to investigate all statements in this application and to secure any necessary information from all my employers, references and academic institutions. **I further understand that any false information, misleading statements or omission of facts will be sufficient cause for rejection of my application if ROID has not employed me and for immediate dismissal if ROID has employed me.** I hereby acknowledge that I have read and understand the preceding statements. (emphasis added)

Ex. A at 136 and Lopez Depo. Ex. 2.  Lopez understood she could be fired at anytime based on the notice in the application:

> Q:  Okay.  What does that mean to you?
> A:  That employment may be terminated at any time.
> Q:  All right.  So even if they'd hired you, they could have fired you shortly thereafter.  Correct?
> A:  Correct.

*Id.*; *see also* Ex. A at 81.

44.     Lopez also acknowledges she received and saw the conditional language in the offer letter.  It stated in bold letters:  "**NOTE: All offers are confidential and are contingent upon successful completion of drug screen and background check**."  Ex. A at 149 and Lopez Depo. Ex. 3.  Despite all this, she admits she did not put her legal name down on the application:

> Q:  What does it say, though?  It says "Mr. Raul Lopez, Jr., doesn't it?
> A:  Correct.
> Q:  How come you didn't put that down on your application with River Oaks?
> A:  Because I didn't.

Ex. A at 198.  Had Lopez done this simple act, she would have been hired.  Ex. F at 146.

45.     Under the *McDonnell Douglas* framework, Lopez must prove she is otherwise at all times fully qualified for the job.  *Alvarado*, 492 F.3d at 611.  River Oaks has established that it required full disclosure and honesty and Lopez admits he did not

put down his legal name.  Accordingly, Lopez cannot prove that she met River Oaks qualifications to obtain or to maintain employment.  Therefore, Lopez cannot make out a prima facie case of discrimination.

## G.    Sexual Stereotyping

46.    The Supreme Court has proscribed, under some circumstances, discrimination based on expecting employees to conform to certain conduct due to their sex.  *Price Waterhouse v. Hopkins, 490* U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989).  In *Price Waterhouse*, a female employee was denied partnership because she did not, in effect, act feminine enough for her firm's taste.  490 U.S. at 234-35.  She was accused of being too aggressive or macho for a woman.  *Id.*  From this opinion, a line of cases has developed in which a viable Title VII cause of action can exist under the right set of facts when a person is discriminated against for failure to conform with his or her gender stereotype. *Etsitty*, 502 F. 3d at 1223 (citing as *e.g., Bibby v. Philadelphia Coca Cola Bottling Co.,* 260 F.3d 257, 262-64 (3d Cir. 2001); *Nichols v. Azteca Rest. Enters.,* 256 F.3d 864, 874-75 (9th Cir. 2001); *Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 261 n.4 (1st Cir. 1999); *Doe by Doe v. City of Belleville,* 119 F.3d 563, 580-81 (7th Cir. 1997), *vacated on other grounds,* 523 U.S. 1001, 118 S. Ct. 1183, 140 L. Ed. 2d 313 (1998)).

47.    The Sixth Circuit has taken the *Price Waterhouse* stereotyping doctrine a step further than any other circuit to date.  In *Smith v. City of Salem, Ohio,* 378 F.3d 566, 574 (6th Cir. 2004) and *Barnes v. City of Cincinnati,* 401 F.3d 729, 737 (6th Cir. 2005) the Sixth Circuit has recognized "it follows that employers who discriminate against men because they do wear dresses and make up, or otherwise act femininely, are also

engaging in sex discrimination, because the discrimination would not occur but for the victim's sex." *Smith,* 378 F.3d at 574.   A careful examination of both the *Smith* and *Barnes* cases shows ample overt acts that clearly demonstrate extreme discriminatory animus towards the plaintiffs, both of whom were already employees and were clearly mistreated. *Id.* at 566-69; *Barnes*, 402 F.3d at 729-35.   Both cases are clearly distinguishable from *Etsitty* (who was also an employee) and even more so from the case at bar.   Lopez was inconsistent, arguably untruthful and withheld information during the formation of the potential employment relationship.   River Oaks had every right under these circumstances even under the holdings in *Smith* and *Barnes* to not hire Lopez when it discovered the inconsistencies in her application package.

48.     The Sixth Circuit is clearly in the minority at this time in its expansion of the *Price Waterhouse* sexual stereotyping doctrine for transsexual cases.   It is likely the Sixth has taken *Price Waterhouse* beyond what either our Fifth Circuit or perhaps even what the current Supreme Court would do.   The Supreme Court has shown its hesitancy in Title VII cases to go a direction without clear expression from Congress.   *See, e.g., Landrgaf v. USI Film Products,* 511 U.S. 244; 114 S. Ct. 1483; 128 L. Ed. 2d 229 (1994). The Fifth Circuit has demonstrated its fast unwillingness to expand the reaches of Title VII by stating "[t]hus, we held the prohibition on sexual discrimination could not be 'extended…to situations of questionable application without some stronger Congressional mandate.'" *Smith v. Liberty Mutual Ins. Co*., 569 F.2d 325, 326-327 (5th Cir. 1978).   This coupled with a reading of the *Etsitty, Ulane* and other similar cases suggests any attempt by Lopez to use *Price Waterhouse, Smith, Barnes* or sexual

16

stereotyping is nothing more than an attempt to manufacture a colorable claim where one does not exist.

49.     As touched on *supra*, the Honorable Lance Africk from the Eastern District of Louisiana did an extensive analysis in a 2002 ruling on a transgender case. *See Oiler*, 2002 U. S. Dist. LEXIS 17417.  Oiler, who engaged in off-duty cross-dressing and claimed he was transgender, was terminated from his job at Winn-Dixie.  *Id.* at *3-14.  Oiler brought suit alleging he was being discriminated against because he was transgender, because of prohibited sexual stereotyping and because he suffered from a disability.  The district court went through an extensive analysis of many of the same issues before this Court in Lopez, past jurisprudence and legislative history.  *Id.* at *18-35.  The court found that through 2001 over thirty proposals have been tendered in the Congress to amend Title VII to include sexual orientation, gender or sexual identity issues and <u>none</u> have passed (emphasis added).  *Id.* at *22.  After a detailed and reasoned opinion, the court granted Winn-Dixies' motion for summary judgment.  *Id.* at *37.  While the *Oiler* opinion, like most of the citations in this motion is only persuasive for this Court in deciding Lopez, the detailed analysis of past jurisprudence and legislative history support the view that Title VII should not be expanded without clear Congressional action.

50.     Even giving Lopez a colorable argument under prohibited stereotyping, her claim still fails for two reasons.  First, River Oaks like UTA in the *Etsitty* case has stated a legitimate reason for not hiring Lopez.  *Etsitty*, 502 F. 3d at 1224-25.  Second, Lopez admits that she has no evidence that she was discriminated against because she is

either male or female.  Rather, she assumes as she testified, it was because she is a female with a penis.  Ex. A at 169.  Of course, she has no evidence of "this theory."

**H.      River Oaks Had Legitimate Reason—No Pretext Under Stereotyping**

51.     Building further on the facts *supra,* in which River Oaks deemed Lopez not qualified due to her failure to follow it's published policies during the application process, River Oaks like UTA had a legitimate non-discriminatory reason not to hire Lopez.   The *Etsitty* court for discussion purposes assumed the plaintiff established a prima facie case under *Price Waterhouse* (in effect giving deference to the Sixth Circuit holding in *Smith*).  *Id.* at 1224-26.  However the court then found that Etsitty offered no evidence to call sufficiently into question UTA's concerns about liability for having a male driver knowingly use women's public restrooms on his route. *Id.*  This was despite evidence in the record in which the decision makers admitted they were also worried about UTA's reputation due to Etsitty's appearance *i.e.* gender characteristics.   *Id.* at 1225.

52.     It is doubtful that even the Sixth Circuit using the *Smith* framework would permit an applicant to ignore the applications instructions and policies of an employer by not providing his or her full legal name at the time of the interview on the application or disclosing his or her transgender status.   As the *Etsitty* court noted "the critical issue under Title VII 'is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" *Id.* (citing *Oncale v Sundowner Offshore Services, Incorporated*, 523 U.S. 75; 80; 118 S Ct 998; 140 L. Ed. 2d 201 (1998)). The *Etsitty* court, while not directly holding, appears to resist the type of expansion of sexual stereotyping that Lopez seeks here.  *Id*. 1224-26.

River Oaks would respectfully urge this Court to do the same especially considering the facts adduced in discovery in this case.

53.     Lopez admits she failed to give her legal name on her application.  Ex. A at 198. Lopez acknowledges River Oaks had every right to not hire or fire somebody because it felt they were not honest.  Lopez stated:

> Q:  Okay.  Do you agree that River Oaks has the right to hire or fire based on whether they think somebody is honest or not?
> A:  Yes.

Ex. A at 181.  She also acknowledges that River Oaks had the right to pick whoever they wanted for the job based on who they liked the best.  Yet, she refuses to acknowledge that it was her inconsistencies in her application and her failure to disclose information that caused River Oaks to rescind the offer. Ex. A at 187.

54.     Lopez only has her subjective belief that River Oaks doesn't like transgender persons[4] or that River Oaks expects all women to have female anatomy.  Ex. A at 169.  It is well settled in the Fifth Circuit, a plaintiff's subjective belief of discriminatory intent is not sufficient to overcome, for summary judgment purposes, an employer's legitimate reason for making an employment decision.  *Roberson v. Alltel Information Serv*., 373 F.3d 647, 654 (5th Cir. 2004); *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434 (5th Cir. 1995); *Lawrence v. University of Texas Med. Branch at Galveston*, 163 F. 3d 309, 313 (5th Cir. 1999); *Elliot v. Group Medical & Surgical Service*, 714 F.2d 556, 564 and 567 (5th Cir. 1983).  Moreover, Plaintiff has no evidence whatsoever to suggest the falsity of the River Oak's patently legitimate explanations for

---

[4] River Oaks had a transgender employee at the time Lopez applied. Ex. F at 143.  Further, Lopez's two sponsors both testified River Oaks was very open-minded about gender related issues.  Ex. H at 28.

its actions.  *See Crawford v. Farmosa Plastics Corp.*, 234 F.3d 899, 902–03 (5th Cir. 2000).

55.     Lopez's sole explanation for why River Oaks stereotypes is based on supposition, not fact.  Lopez "assumes" River Oaks expects woman to have female anatomy and therefore they must have discriminated:

> Q:  But why?
> A:  Because I didn't fit their stereotype.
> Q:  And what was their stereotype?
> A.  They believe that all women should have – I'm assuming – a vagina and all men should have a penis.

Ex. A at 169.

56.     Yet the letter to Lopez sent on her request about a month after her job offer was rescinded makes it clear that the issue was misrepresentation.  The letter states in pertinent part:

> As was previously explained to you, our offer was rescinded because we believe you **misrepresented** yourself to us during the interview process.  You presented yourself as a female and we later learned you are a male. (emphasis added)

Ex. A depo. Ex. 5.  To buttress Lopez's tortured theory on sexual stereotyping and to create a fact issue under the most liberal interpretation of *Smith*, River Oaks would respectfully argue that Lopez has to have something more.[5]

57.     When asked what evidence Lopez has that River Oaks discriminated against her either because she is a woman or a man, Lopez offered the following testimony:

> Q:  And the illegal reason was?
> A:  Sex discrimination.

---

[5] River Oaks does not suggest that *Smith* is authority that this Court should follow, but rather River Oaks believes when applying the facts of this case to the law in *Smith*, Lopez still fails to make a prima facie case.  River Oaks also questions where the Fifth Circuit would follow *Smith.*

> Q:  Because you're a man?
> A.   Because I was born a male.
> Q:   So you're saying they discriminated against you
> because you were born a male?
> A:  Correct

Ex A at 207.  Yet when questioned on what evidence Lopez has that River Oaks has any

discriminatory animus towards either sex, Lopez admitted she has none.

> Q:  All right.  Now, what evidence do you have that River Oaks
> Imaging doesn't like males?
> A:  I don't.
> Q:  What evidence do you have that River Oaks Imaging doesn't
> like females?
> A:  I don't.

Ex. A at 172.

58.     Lopez relies totally on her subjective view of the letter she received.

Lopez admits she has no other evidence, but her subject belief:

> Q:  Again, the letter is the only thing – only piece of evidence in
> the entire case that you have outside of your subjective belief.
> Correct?
> Q: Yes or no?
> A:  Yes.

Ex. A at 260.   Nonetheless, Lopez concedes that River Oaks was concerned she

misrepresented herself.

> Q:  Right.  So their [River Oaks'] concern is misrepresented yourself.
> Q:  Correct?
> A:  Their concern.  Correct.

Ex. A at 264.  Somehow in Lopez's mind River Oaks concerns are meaningless.  Yet,

Lopez has zero evidence they are false or pretext.

59.     Lopez acknowledges he is physically a man.  Ex. A at 251.  Admits he has

no evidence that River Oaks discriminates against men.  *Id*. at 172.  Lopez also says she's

a woman and intends to appear that way.  *Id.* at 138.  Yet Lopez admits River Oaks

doesn't discriminate against women.  *Id.* at 172.   She then equates transgender discrimination to sexual stereotyping discrimination and says its all the same thing.

> Q:  It is transgender?
> A:   Transgender – stereo – stereo – sex discrimination based on stereotype.  It's all the same thing.

Ex. A at 197.

60.     If Lopez's view of transgender discrimination, given the facts of her case, is accepted, anytime an employer takes any adverse employment action against a transgender person, the employer could and likely would be sued for discrimination. Lopez is essentially saying that I do not have to follow your application instructions requiring full-disclosure - including putting my correct legal name on the application; and if you don't hire me because of I did not follow your policy, the only possible reason is you discriminate against transgenders and you sexually-stereo type expecting all people to have the anatomy of their respective portrayed sex.

61.     This is not what the *Smith* case stands for.  It is clearly against the great weight of the holdings in cases involving same or similar issues.  But, more importantly, to allow litigation to go forward on such thin facts and biased subjective beliefs will only make employers afraid to enforce legitimate policies and regulations.  Men would be using women's restrooms and women would be using men's restrooms.  The very boundaries of society would be washed away.  In *Etsitty*, these vary issue were touched on and the Tenth Circuit wisely found an employer can have legitimate, non-discriminatory concerns about them.  *Etsitty*, 502 F.3d 1225-27.

62.     Lopez has done nothing under even an expansive interpretation of *Price Waterhouse* and sexual stereotyping to call into question the credibility of River Oaks'

decision.  Lopez has no evidence, other than her subject beliefs, and arguably Lambda's political agenda.  Lopez can point to no evidence in the record that suggests River Oaks' articulated legitimate business decision is not true or that there were even other motivating factors on River Oaks' part.  *Alvarado*, 492 F. 3d 611; *Etsitty*, 502 F.3d 1225.

63.     Lopez has no evidence that River Oaks discriminates against anyone or that it treated her any differently under its strict application and employment policies. The decision-maker CFO Jimmerson, and HR Manager French, both testified that they never saw or met Lopez and that the decision to not hire was strictly based on Lopez's inconsistencies and failure to follow policy during the application process.  Both testified that River Oaks had fired employees for similar conduct.  Indeed, they overrode after the inconsistencies surfaced Scheduling Manager Williams' and Assistant Scheduling Manger Dixon's recommendation to hire Lopez.  Despite Lopez' protestations, she has no evidence that this decision was motivated by any improper animus under any interpretation of Title VII.  In the end, Lopez is left with nothing but her subjective belief that she was mistreated and somebody should pay.

## CONCLUSION

64.     Therefore, all of Plaintiff Izza Lopez aka Raul Lopez, Jr.'s claims should be dismissed and the Defendant River Oaks Imaging and Diagnotic Group, Inc., should be granted a full and final summary judgment.

Respectfully submitted,

/s/Howard T. Dulmage

_____

Howard T. Dulmage
State Bar No. 24029526
Federal Bar No. 28826
McCormick, Hancock & Newton
1900 West Loop South, Suite 700
Houston, Texas 77027
(713) 297-0700
(713) 297-0710 (Telecopier)
ATTORNEYS FOR DEFENDANT,
River Oaks Imaging and Diagnostic
Group, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent to all counsel of record pursuant to the Federal Rules of Civil Procedure and the local rules on e-filing on this 7th day of December 2007.

/s/Howard T. Dulmage_____
Howard T. Dulmage