IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IZZA LOPEZ, a/k/a Raul Lopez, Jr.,    §
          Plaintiff,    §
     §
v.    §    CIVIL ACTION NO. H-06-3999
     §
RIVER OAKS IMAGING &    §
DIAGNOSTIC GROUP, INC.,    §
          Defendant.    §

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiff Izza Lopez's Motion for Partial Summary Judgment [Doc. # 21].[1]  Defendant River Oaks Imaging & Diagnostic Group, Inc. ("River Oaks") has responded [Doc. # 27] and Lopez has replied [Doc. # 32].  Also pending is River Oaks' Motion for Final Summary Judgment [Doc. # 29].  Lopez has responded [Doc. # 30] and River Oaks has replied [Doc. # 34].  Upon review of the parties' submissions, all pertinent matters of record, and applicable law, the Court concludes that both Lopez's and River Oaks' motions should be **denied**.[2]

---

[1]     Lopez seeks summary judgment on liability, but requests a trial to determine damages.

[2]     River Oaks has filed a Motion to Strike Plaintiff's Evidence in Plaintiff's Motion for Partial Summary Judgment [Doc. # 28].  River Oaks objects to Plaintiff's use of a report as an exhibit on the grounds of improper authentication.  River Oaks also argues that the report contains inadmissible hearsay.  Lopez has responded [Doc. # 31] and has provided an affidavit authenticating the challenged exhibit.  The exhibit
(continued...)

## I.   **FACTUAL BACKGROUND**

Plaintiff Izza Lopez, a/k/a/ Raul Lopez, Jr., suffers from Gender Identity Disorder ("GID"), characterized by "[a] strong and persistent cross-gender identification" and "[p]ersistent discomfort with [one's] sex or [a] sense of inappropriateness in the gender role of [one's] sex." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 581 (4th ed. 2000). Accordingly, while she is biologically male, she lives her life as a woman, consistent with accepted medical and therapeutic protocols for her condition.  Lopez plans to undergo sex reassignment surgery when she is financially able to do so.

In September 2005, Lopez applied for a job with Defendant River Oaks, a medical clinic, as a Scheduler.[3]  Lopez was interviewed for the position by River Oaks' Director of Scheduling, Maddy Williams, and River Oaks' Scheduling Manager, Tameka Dixon.  Lopez believed that both interviewers were aware, prior to

---

[2]       (...continued)
        is now properly authenticated and is deemed admissible.  In addition, because the Court does not rely on inadmissible hearsay in reaching its decision on Plaintiff's Motion for Partial Summary Judgment, River Oaks' Motion to Strike is **denied as moot**.

[3]       It appears that a Scheduler schedules patient appointments over the phone.  *See* Plaintiff's Response to Defendant's Motion for Final Summary Judgment ("Plaintiff's Response") [Doc. # 30], Exh. I.1: "Tameka Dixon Deposition Transcript," at 46; Exh. III: "Cherrone French Deposition Transcript," at 100.  In so doing, a Scheduler is provided with private patient information. *See id.*  There is no suggestion that Lopez was applying for a position in which she would be performing or assisting with medical procedures on patients, or even meeting patients face-to-face.

her interview, that Lopez is transgendered, both having been informed of her status by friends of Lopez who worked at River Oaks.[4]  Lopez further claims that she provided both the name by which she is known—Izza—and her legal name—Raul—on her River Oaks job application.[5]

Lopez was offered the position, contingent upon her successful completion of a background check and drug screen.  She completed the relevant paperwork using her legal name, Raul Lopez, as well the name she has adopted, Izza,[6] and provided the forms to a River Oaks recruiter, Elle Pallugna.  Several days later, Pallugna contacted Lopez to tell her that she passed the background check and drug screen and to formally offer her the position.  Lopez and Pallugna agreed to a start date, and Lopez subsequently gave notice to her then-current employer.

---

[4]     Tameka Dixon admitted knowing that Lopez was transgendered before and during her interview.  *See* Defendant's Response to Plaintiff's Motion for Partial Summary Judgment ("Defendant's Response") [Doc. # 27], Exh. B: "Tameka Dixon Deposition Transcript," at 30–31; *see also* Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's MPSJ") [Doc. # 21], Exh. II.4: "Tameka Dixon Deposition Transcript," 57.

[5]     *See id.*, Exh. I.1: "River Oaks Application for Employment,"at Bates No. ROI005.  (Some of Plaintiff's exhibits are not separately paginated and are referred to herein by Bates number.)  On the application, Lopez listed "Izza" on the space for "first name" and "(Raul)" on the space for "middle name."  Her resume lists "Izza Lopez" as her name.  *See* Defendant's Motion for Summary Judgment ("Defendant's MSJ") [Doc. # 23], Exh. A: "Izza Lopez Deposition Transcript," at Exh. 1.

[6]     *See* Plaintiff's MPSJ [Doc. # 21], Exh. I.1: "Pre-Employment Disclosure & Release," at Bates No. ROI0019.

Soon thereafter, Lopez received a call from Pallugna and Cherrone French, River Oaks' Human Resources Director.  Pallugna informed Lopez that Lopez's background check revealed that she was male.  Thus, she explained that River Oaks was withdrawing its job offer because it concluded that Lopez had "misrepresented" herself as a woman during the interview process.  At Lopez's request, French sent Lopez a letter confirming the company's decision and stating, "As we previously explained to you, our offer was rescinded because we believe you misrepresented yourself to us during the interview process.  You presented yourself as a female and we later learned you are a male."[7]

Lopez filed a sex discrimination complaint with the U.S. Equal Employment Opportunity Commission ("EEOC").  The EEOC issued Lopez a "Notice of Right to Sue."  This lawsuit followed, with Lopez alleging a single cause of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

## II.   <u>LEGAL STANDARD</u>

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case for which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*,

---

[7]   *See id.*, Exh. II.1: "Letter Rescinding River Oaks Job Offer," at Bates No. ROI0029.

477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).   In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   FED. R. CIV. P.  56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its burden by pointing out "'the absence of evidence supporting the non-moving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak*, 953 F.2d at 913).  However, if the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response.  *ExxonMobil Corp.*, 289 F.3d at 375.

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the non-moving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that unsworn pleadings do not constitute proper summary judgment evidence). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th

Cir. 1998).  Instead, the non-moving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case."  *Id.* In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Finally, "[w]hen evidence exists in the summary judgment record but the non-movant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  *See id.* (internal citations and quotations omitted); *see also De la O v. Hous. Auth. of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005).

## III.  ANALYSIS

Lopez brings suit against River Oaks, alleging that it violated her civil rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, when it discriminated against her on the basis of her sex.  Specifically, Lopez asserts that River Oaks impermissibly rescinded its job offer to her because she failed to conform with traditional gender stereotypes. Alternatively, Lopez asserts that "River Oaks

discriminated against [her] because of her transgender status."[8]  River Oaks primarily contends that it rescinded its job offer because Lopez lied to the company when she failed to disclose that she is biologically male, both to her interviewers and on her resume and job application.  However, River Oaks also suggests that Lopez has failed to raise a viable legal claim, arguing that there is no Title VII protection for transgendered individuals under either of the theories Lopez asserts.  It is this question—whether Lopez has a cognizable legal claim—to which the Court turns first.

## A.    <u>Legal Issues</u>

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  Through case law, the contours of Title VII's prohibition against sex discrimination have been defined to include discrimination against individuals who fail to conform with traditional gender stereotypes. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989).  Relying on this precedent, litigants have seized upon the seemingly broad language of *Price Waterhouse* to argue that

---

[8]        Complaint [Doc. # 1], ¶ 27.  Cases cited by the parties and relied upon by the Court appear to use the terms "transgender" and "transsexual" interchangeably.  Unless otherwise stated, the Court's use of either term herein is intended to refer to an individual with Gender Identity Disorder, rather than to an individual colloquially known as a "cross-dresser" or "transvestite," who may dress in clothing traditionally associated with the opposite sex without necessarily identifying with, or believing oneself to be, a person of the opposite gender.

Title VII protects transgendered individuals, who, it is argued, by dressing and behaving as a member of the opposite sex, merely fail conform with other's views of how men and women should look and act.

Courts that have been presented with this issue have reached divergent conclusions.  Courts consistently find that transgendered persons are not a protected class under title VII *per se. See, e.g.*, *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1221–22 (10th Cir. 2007); *Ulane v. E. Airlines, Inc.*, 742 F.2d 1081, 1084 (7th Cir. 1984); *Sommers v. Budget Mktg., Inc.*, 667 F.2d 748, 750 (8th Cir. 1982).  *But cf. Schroer v. Billington*, 424 F. Supp. 2d 203, 212 (D.D.C. 2006) ("[I]t may be time to revisit . . . the [rejected] conclusion . . . that discrimination against transsexuals *because they are transsexual* is 'literally' discrimination 'because of . . . sex.'").[9]

---

[9]  Lopez notes in passing that she "respectfully disagrees" with these holdings.  *See* Plaintiff's Reply to Defendant's Response to Motion for Partial Summary Judgment ("Plaintiff's Reply") [Doc. # 32], 8.  She also asserts, citing *Schroer*, that "[s]ome courts have held that discrimination against transsexuals because they are transsexuals might literally be discrimination because of sex."  Plaintiff's Response [Doc. # 29], at 6.  However, in spite of the allegation in her Complaint that she was discriminated against because she is transgendered, she makes no affirmative arguments—either directly or in response to River Oaks' Motion for Final Summary Judgment—that she is entitled to prevail under the theory that discrimination based upon an individual's gender identity is sex discrimination *per se*.  Lopez does argue that River Oaks rescinded its job offer because "Lopez 'passed' as a female during her job interview," but was later determined, "in its view, [that] she is a male," and that that constitutes discrimination "because of sex."  Plaintiff's MPSJ [Doc. # 21], at 11. However, the Court construes this as merely a variation of her primary claim that she was discriminated against for failing to conform with traditional gender stereotypes.  *Cf. Etsitty*, 742 F.2d at 1221–22 (holding that transsexuals are not a protected class under

(continued...)

However, some courts have accepted the theory that *Price Waterhouse* protects transgendered individuals who can demonstrate that they were subject to discrimination, not because they are transgendered, but because their appearance and conduct does not conform to traditional male or female stereotypes. *See, e.g.*, *Etsitty*, 742 F.2d at 1222 n.2; *Smith v. City of Salem*, 378 F.3d 566, 571–75 (6th Cir. 2004); *Schroer*, 424 F. Supp. 2d at 211.  This is the crux of Lopez's claim and a theory that has yet to be addressed by the Fifth Circuit Court of Appeals.[10]

The plaintiff in *Price Waterhouse* was a female associate at an accounting firm who was passed over for partnership, ostensibly because of her "aggressiveness." However, her evaluators for partnership suggested that she could improve her chances

---

[9]     (...continued)
Title VII in response to the plaintiff's argument that "because a person's identity as a transsexual is directly connected to the sex organs she possesses, discrimination on this basis must constitute discrimination because of sex"). Indeed, Lopez makes clear that "this action presents a claim of sex stereotyping."  Plaintiff's Response [Doc. # 29], at 7.  The Fifth Circuit consistently holds that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal. *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002) (citing *Dowthitt v. Johnson,* 230 F.3d 733, 747 n. 16 (5th Cir.2000); *Johnson v. Puckett*, 176 F.3d 809, 814 (5th Cir.1999)).  By analogy, failure to brief an argument in the district court waives that argument in that court.  Thus, the Court need not reach whether "transgendered" individuals, as a class, are recognized under Title VII and its prohibitions on sex discrimination.  To the extent Lopez is relying on this theory, her claim is deemed waived.

[10]    One district court in the Fifth Circuit has considered this issue and has concluded that transgendered individuals are not entitled to protection under Title VII, either directly or via application of *Price Waterhouse*.  *See Oiler v. Winn-Dixie La., Inc.*, No. 00-3114, 2002 U.S. Dist. LEXIS 17417 (E.D. La. Sept. 16, 2002) (Africk, J.).  That decision was not appealed and is not binding on this Court.

for partnership if she were to be less "macho," take "a course at charm school," or "walk more femininely, talk more femininely, dress more femininely, have her hair styled, and wear jewelry."  404 U.S. at 235.  The Supreme Court found that such conduct by the plaintiff's superiors bespoke of sex discrimination and stated that "[i]n the specific context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender."  *Id.* at 250.  Further, the Court emphasized that "[w]e are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotypes associated with their group."  *Id.*  at 251.

Following the Court's pronouncement in *Price Waterhouse*, lower courts have regularly recognized a cause of action under Title VII for discrimination based on a plaintiff's alleged failure to conform with gender stereotypes.  *See, e.g.*, *Dawson v. Bumble & Bumble*, 398 F.3d 211, 218–21 (2d Cir. 2005); *Bibby v. Phila. Coca-Cola Bottling Co.*, 260 F.3d 257, 263–64 (3d Cir. 2001); *Nichols v. Azteca Rest. Enters.*, 256 F.3d 864, 874–75 (9th Cir. 2001); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 261 n.4 (1st Cir. 1999); *Doe v. City of Belleville*, 119 F.3d 563, 580 (7th Cir. 1997), *vacated on other grounds*, 523 U.S. 1001 (1998).

However, some courts have attempted to distinguish cases brought by transgendered individuals on the grounds that their gender nonconformity is

somehow different in kind from that contemplated by Congress and the *Price Waterhouse* Court.  *See, e.g.*, *Etsitty v. Utah Transit Auth.*, No. 2:04CV616, 2005 U.S. Dist. LEXIS 12634, at \*10–\*15 (D. Utah June 24, 2005) ("There is a huge difference between a woman who does not behave as femininely as her employer thinks she should, and a man who is attempting to change his sex and appearance to be a woman."); *Oiler*, 2002 U.S. Dist. LEXIS 17417, at \*24–\*31 ("This is not just a matter of an employee of one sex exhibiting characteristics associated with the opposite sex. This is a matter of a person of one sex assuming the role of a person of the opposite sex.").   Although these courts typically engage in analysis based primarily on perceived legislative intent to reach their conclusions, this Court is unpersuaded.  The Court cannot ignore the plain language of Title VII and *Price Waterhouse*, which do not make any distinction between a transgendered litigant who fails to conform to traditional gender stereotypes and an "effeminate" male or "macho" female who, while not necessarily believing himself or herself to be of the opposite gender, nonetheless is perceived by others to be in nonconformity with traditional gender stereotypes.  There is nothing in existing case law setting a point at which a man becomes *too* effeminate, or a woman becomes *too* masculine, to warrant protection under Title VII and *Price Waterhouse*.  To hold otherwise would be to permit employers and "courts [to] superimpose classifications such as 'transsexual' on a

plaintiff, and then legitimize discrimination based on the plaintiff's gender non-conformity by formalizing the non-conformity into an ostensibly unprotected classification." *Smith*, 378 F.3d at 574.  As the *Price Waterhouse* Court noted, "in forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." *Price Waterhouse*, 490 U.S. at 251; *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998) ("[S]tatutory provisions often go beyond the principal evil to cover reasonably comparable evils.").

To that end, Lopez's "transsexuality is not a bar to her sex stereotyping claim. Title VII is violated when an employer discriminates against any employee, transsexual or not, because he or she has failed to act or appear sufficiently masculine or feminine enough for an employer." *Schroer*, 525 F. Supp. 2d at 63; *see Barnes v. City of Cincinnati*, 401 F.3d 729, 737 (6th Cir. 2005); *Smith*, 378 F.3d at 574–75; *Mitchell v. Axcan Scandipharm, Inc.*, No. 05-243, 2006 U.S. Dist. LEXIS 6521 (W.D. Pa. Feb. 17, 2006); *Kastl v. Maricopa County Cmty. Coll. Dist.*, No. CIV 02-1531-PHX-SRB, 2004 U.S. Dist. LEXIS 29825, at *8 (D. Az. June 3, 2004); *Tronetti v. TLC Healthnet Lakeshore Hosp.*, No. 03-CV-0375E(Sc), 2003 U.S. Dist. LEXIS 23757, at *12 (W.D.N.Y. Sept. 26, 2003); *see also Lynch v. Baylor Univ. Med. Ctr.*, No. 3:05-CV-0931-P, 2006 U.S. Dist. LEXIS 62408, at *17 (N.D. Tex. Aug. 23,

2006); *cf. Schwenk v. Hartford*, 204 F.3d 1187, 1202 (9th Cir. 2000); *Rosa v. Park W. Bank & Trust Co.*, 214 F.2d 213, 215–16 (1st Cir. 2000).

In this case, Lopez has pled, and developed facts in support of, a claim that River Oaks discriminated against her, not because she is transgendered, but because she failed to comport with certain River Oaks employees' notions of how a male should look. Having concluded that Plaintiffs states a legally viable claim, the Court next turns to whether either party has shown entitlement to summary judgment, that is, whether either party has established as a matter of law that River Oaks in fact did or did not violate Lopez's rights under Title VII.

**B.    Fact Issues**

Unlawful discrimination under Title VII can be established through either direct or circumstantial evidence.  *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001) (citing *Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1999)). Direct evidence "proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis*, 309 F.3d 893, 897 (5th Cir. 2002).  It "includes any statement or written document showing a discriminatory motive on its face."  *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 195 (5th Cir. 2001).  If a plaintiff provides direct evidence, then the burden shifts to the employer to prove "'by a preponderance of the evidence that [it] would have acted as [it] did without regard

to the plaintiff's [protected characteristic].'" *Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir. 1990) (quoting *Guillory v. St. Landry Parish Police Jury*, 802 F.2d 822, 824 (5th Cir. 1986)).

In the absence of the direct evidence, a plaintiff's claim is analyzed using the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). Under this test, a plaintiff must initially establish a *prima facie* case of sex discrimination, which raises a presumption of discrimination. *Id.*; *see also Wallace*, 271 F.2d at 220. To establish a *prima facie* case of sex discrimination, a plaintiff must show: "(1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated [but outside the protected class] were treated more favorably." *Willis v. Coca-Cola Enters.*, 445 F.3d 413, 420 (5th Cir. 2006) (citing *Rutherford v. Harris County*, 197 F.3d 173, 184 (5th Cir. 1999); *see also Alvarado*, 492 F.3d at 611. Alternatively, in work rule-violation cases, such as this, "a Title VII plaintiff may establish a *prima facie* case by showing 'either that [s]he did not violate the rule or that, if [s]he did, [employees outside the protected class] who engaged in similar acts were not punished similarly.'" *Mayberry*, 55 F.3d at 1090 (quoting *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980)).

If the plaintiff successfully establishes her *prima facie* case, the burden shifts

to the defendant-employer to articulate a legitimate, nondiscriminatory reason for its

actions. *Alvarado*, 492 F.3d at 611.  The burden on the defendant at this stage "'is one

of production, not persuasion; it can involve no credibility assessment.'"  *Id.* (quoting

*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000) (internal quotation

and citation omitted)).   If the defendant sustains its burden, "the presumption of

discrimination dissipates." *Wallace*, 271 F.3d at 220 (citing *Russell v.  McKinney*

*Hosp.  Venture*, 235 F.3d 219, 222 (5th Cir.  2000).  The burden then "shifts back to

the plaintiff to establish: (1) that the employer's proffered reason is not true[,] but is

instead a pretext for discrimination; or (2) that the employer's reason, while true, is

not the only reason for its conduct, and another 'motivating factor' is the plaintiff's

protected characteristic.  *Alvarado*, 492 F.3d at 611 (citing *Rachid v. Jack in the Box,*

*Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).  "The plaintiff bears the ultimate burden of

persuading the trier of fact . . . that the employer intentionally discriminated against

her because of her protected status."  *Wallace*, 271 F.3d at 220 (citing *St. Mary's*

*Honor Ctr. v. Hicks*, 509 U.S. 502, 511–12 (1993); *Texas Dep't of Cmty. Affairs v.*

*Burdine*, 450 U.S. 248, 253 (1981)).

### 1.  *Direct Evidence of Discrimination*

Lopez argues that she has presented direct evidence of discrimination, namely,

the statement of Elle Pallugna and subsequent letter from Cherrone French stating that

River Oaks was rescinding its job offer because Lopez had "misrepresented" herself as female when she "presented [her]self as a female" but was "later learned [to be] a male." River Oaks counters that this statement reflects nothing more than River Oaks' implementation of its policy against hiring an applicant who lied during the interview process. Accordingly, River Oaks argues that this statement is not direct evidence of discrimination, or alternatively, that it is too ambiguous to qualify as direct evidence.

The statement is open to two interpretations. On the one hand, it could be that Pallugna and French were expressing River Oaks' decision to rescind the job offer on the basis that the company believed Lopez to be dishonest. On the other hand, a factfinder could conclude that this statement reflected River Oaks' animus against an individual who "presented [her]self" in a manner inconsistent with hiring managers' preconceived notions of what a male should look and act like. In either event, whether the focus of the statement should be on the alleged misrepresentation or, more particularly, on the subject of the alleged misrepresentation, the proper interpretation is a question of fact that cannot be resolved as a matter of law on the record before the Court.

That the statement may require "context and explanation"[11] does not take it out of the realm of direct evidence. The statement directly links the adverse employment

---

[11]     *See* Defendant's Response [Doc. # 27], ¶ 2.

action at issue with the alleged unlawfully discriminatory motive.  *See, e.g.*, *Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 273 (5th Cir. 2006) (finding that the proffered evidence did not qualify as direct evidence because of an insufficient nexus between the racist statements at issue and the adverse employment action suffered by the plaintiff).  Because the statement could be evidence which, when viewed in the light most favorable to the non-movant, Lopez, "proves that fact [of discrimination] without inference or presumption," and suggests that "discriminatory animus in part motivated or was a substantial factor" in River Oaks' decision to rescind the job offer, *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993), it qualifies as direct evidence sufficient to overcome River Oaks' motion for summary judgment. *See Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003) ("In a Title VII context, direct evidence includes any statement or document which shows on its face that an improper criterion served as a basis—not necessarily the sole basis, but *a* basis—for the adverse employment action."); *see also Jones v. Robinson Prop. Group, LP*, 427 F.3d 987, 993–94 (5th Cir. 2005) ("[A statement that] clearly and explicitly indicates that the decision maker(s) . . . used [race, sex, etc.] as a factor in employment decisions, . . . is by definition direct evidence of discrimination.").

On the other hand, when interpreted in the light most favorable to River Oaks in defense against Lopez's summary judgment motion, there exists a question of fact

whether the statement reflects discriminatory animus on the part of River Oaks or whether it is best interpreted as implementing a neutral and non-discriminatory company policy.  Because this question of fact is genuine and material, summary judgment in favor of Lopez also is not warranted.

In addition, neither party has succeeded in demonstrating the absence of any issues of material fact on the second prong of the direct evidence analysis.  "If an employee presents credible direct evidence that discriminatory animus at least in part motivated, or was a substantial factor in the adverse employment action, then it becomes the employer's burden to prove by a preponderance of the evidence that the same decision would have been made regardless of the discriminatory animus." *Jones*, 427 F.3d at  992 (citing *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993); *Price Waterhouse*, 490 U.S. 228).  Neither Lopez nor River Oaks has asserted any arguments on this issue.  Lopez has merely addressed her burden of providing direct evidence of discrimination.   River Oaks has disputed that the evidence cited by Lopez qualifies as direct evidence without ever reaching the second prong of the analysis.  Thus, because the issue has not been fully addressed, summary judgment is not warranted on this issue.

### 2.    *Indirect Evidence of Discrimination*

Next, the Court considers, in connection with the parties' competing summary

judgment motions, the *McDonnell-Douglas* "rule-violation" test.  To proceed under this test, the burden is on Lopez to establish that she did not violate the rule alleged by River Oaks or that, if she did, other applicants outside of her protected class engaged in similar conduct, but were treated more favorably by the company.  *See Mayberry*, 55 F.3d at 1090.

River Oaks argues strenuously that Lopez lied during the interview process, and that it was her failure to affirmatively reveal her status as biologically male that led to the decision to rescind the job offer.  However, River Oaks' evidence in support of that position is sparse, at best. Lopez, on the other hand, has provided ample evidence to meet her *prima facie* burden to demonstrate that she did not "misrepresent" herself as River Oaks alleges.  *See Green*, 612 F.2d at 968 ("[T]he plaintiff must demonstrate by a preponderance of the evidence that [s]he did not violate the rule . . . .").

First, at no point during the interview process was Lopez asked to reveal her sex, either orally or on River Oaks' job application and hiring forms.[12] Thus, to the extent River Oaks attempts to equate her alleged misrepresentation with that of applicants who indicated "no" in response to questions on the company's job

---

[12]   *See* Plaintiff's MPSJ [Doc. # 21], Exh. I.1: "River Oaks Application for Employment"; Exh. I.1: "Pre-Employment Disclosure & Release"; Exh. III.1: "Elle Pallugna Deposition Transcript," at 88 (stating that no River Oaks hiring forms ask applicants to disclose their sex).

application such as, "Have you ever been convicted . . . [of] any felony?,"[13] but were then discovered to have a criminal record, such a comparison fails. Further, to the extent River Oaks is suggesting that any person who dresses in a manner inconsistent with traditional gender stereotypes is necessarily deceptive, such a position is rejected. *Cf., e.g.*, *Doe v. McConn*, 489 F. Supp. 76 (S.D. Tex. 1980); *City of Chicago v. Wilson*, 389 N.E.2d 522 (Ill. 1978) (finding unconstitutional a local "anti-cross dressing" statute and rejecting as a justification for the statute the aim "to protect citizens from being misled or defrauded").

Moreover, River Oaks' position appears to be that the Court should recognize or impose an affirmative duty on Lopez to reveal her GID, and accordingly, her biological sex, to a prospective employer, even though, as River Oaks admits, sex is not a bona fide occupational qualification for the Scheduler position Lopez applied for and was offered.[14] *See* 42 U.S.C. § 2000e-2(e)(1) (permitting an employer to discriminate on the basis of sex where sex is a "bona fide occupational qualification reasonably necessary to the normal operation of [the] particular business or enterprise"). River Oaks cites no legal authority establishing, or even suggesting, the

---

[13]   *See id.*, Exh. I.1: "River Oaks Application for Employment," at ROI0005; *see also* Defendant's Response [Doc. # 27], Exh. F: "Cherrone French Deposition Transcript," at 109–12.

[14]   *See id.*, Exh. IV.1: "Cherrone French Deposition Transcript," at 56–57.

existence of such a legal duty.  Accordingly, the Court declines to recognize one.[15]

Interestingly, in this case, despite the absence of a legal duty, Lopez has offered

evidence that she in fact took steps to affirmatively inform the company of her

---

[15]     River Oaks suggests that job applicants should be legally required to disclose their sex, even when membership in a particular sex is not a job requirement, so that employers will know in advance what bathroom a potential employee will use.  This argument is unavailing. First, there is no evidence that this was a concern that motivated River Oaks' decision to rescind its job offer to Lopez.  *See, e.g.*, Plaintiff's Response [Doc. # 30], Exh. III: "Cherrone French Deposition Transcript," at 169–70. In fact, River Oaks admits that the facility in which Lopez would have worked was equipped with a unisex restroom that she could have used with "absolute privacy." *Id.*, at 170.  Furthermore, the case cited by River Oaks in support, *Etsitty*, 502 F.3d 1223–28, does not stand for as broad a proposition as River Oaks implies.  *Etsitty* involved a transgendered city bus driver and issues surrounding her use of *public* restrooms while in her city uniform.  Nothing in that case suggests that job applicants have an affirmative duty to volunteer their gender so that it may be considered in making a hiring decision.

Similarly, River Oaks suggests that affirmative disclosures are necessary because employers must note their employees' sex on healthcare benefits forms.  Again, there is no evidence that this concern was contemplated by River Oaks in making the decision at issue and River Oaks offers no legal support for the notion that an employer may discriminate against a potential employee for this reason.

In any event, while it is true that a person's gender may be legally significant in certain contexts, any such significance yields to Title VII's prohibitions on discrimination because of sex in the absence of a bona fide occupational need. Nonetheless, if knowledge of an applicant's sex was truly necessary in order for River Oaks to make a fully informed and legally permissible hiring decision, it should have affirmatively sought such a disclosure. *But see* Plaintiff's Reply [Doc. # 32], Exh. 2: "Martin Jimmerson (River Oaks' CFO) Deposition Transcript," at 22 (stating that he is uncertain whether River Oaks could legally ask an job applicant to disclose his sex during the interview process).  Having declined to do so, Lopez cannot be faulted for failing to volunteer during her interview, as River Oaks  would require, "I am transgender and my legal name is still Raul Lopez, Jr."  *See* Defendant's Response [Doc. # 27], ¶ 19.

biological sex.  Indeed, at least one of her interviewers had been told that Lopez was transgendered and that interviewer admits she was aware of this fact throughout the entire interview process. Lopez also listed as job references two then-current River Oaks employees, each of whom knew of Lopez's status and has stated that she (each employee) had informed both of Lopez's interviewers of it prior to Lopez's interview.[16]

Further, Lopez has established that she listed both her legal and adopted names on all relevant paperwork associated with her hiring.  River Oaks counters that Lopez listed herself as "Izza Lopez" on her resume and "Izza (Raul) Lopez" on her job application.  River Oaks' reliance on this argument is misplaced.  It is initially noted that the relevance of this alleged inconsistency is unclear as River Oaks explained, both orally and in writing, that its decision to rescind Lopez's job offer was based simply on her alleged "misrepresentation" as female.[17]

_____

[16]    *See* Plaintiff's MPSJ [Doc. # 21], Exh. II.2: "Marissa Samaniego Deposition Transcript," at 41–42 (stating that she informed River Oaks' Director of Scheduling, Maddy Williams—at Lopez's request—of Lopez's transgendered status prior to Lopez's interview); Exh. II.3: "Maria Granados Deposition Testimony," at 28–32 (stating that she informed both of Lopez's interviewers, Maddy Williams and Tameka Dixon, that Lopez was transgendered prior to Lopez's interview); Exh. II.3: "Tameka Dixon Deposition Transcript," at 30, 57 (stating that she was aware that Lopez was transgendered during her interview of Lopez); Exh. III.2: "Maddy Williams Deposition Transcript," at 57 (stating that she remembered speaking with Marissa Samanego and Maria Granados about Lopez prior to Lopez's interview).

[17]    *See id.*, Exh. II.1: "Letter Rescinding River Oaks Job Offer," at Bates No. ROI0029;
(continued...)

However, assuming *arguendo* that these alleged inconsistencies in Lopez's hiring paperwork were a ground for River Oaks' decision, Lopez nevertheless has presented ample evidence to meet her *prima facie* burden to show that her conduct did not constitute the "misrepresentation" the company claims.  Although Lopez listed only her adopted name on her resume, she listed both her adopted and legal names on her job application.  In addition, Lopez listed "Raul Lopez" as her "Full Name" and "Izza Lopez" as an "Other Name Used" on her background check forms.  There is no evidence that any River Oaks employee was confused by her listing these two names on her paperwork. In fact, River Oaks' recruiter, Elle Pallugna, completed Lopez's hiring forms by listing Lopez's name as "Lopez, Raul (Izza)."[18]  There is also no evidence that the company charged with conducting Lopez's background check was unable to procure accurate information on the basis of her use of an adopted name. In short, Lopez appropriately disclosed her legal and adopted names and has adequately demonstrated, in defense of River Oaks' motion for summary judgment, that she did not violate the River Oaks work-rule.

Since Lopez has established a *prima facie* case of discrimination, River Oaks

---

[17]    (...continued)
Exh. IV.1: "Cherrone French Deposition Transcript," at 65 (stating that the only hiring document demonstrating an inconsistency that led to River Oaks' decision to rescind its job offer was the background check form indicating that Lopez is male).

[18]    *See id.*, Exh. III.1: "Elle Pallugna Deposition Transcript," at 61–62 & attached deposition exhibits.

must articulate a legitimate, non-discriminatory reason for its decision to rescind its job offer.  River Oaks points to its rights to act as an "at-will" employer and enforce its policy against hiring any applicant whose background check reveals an inconsistency with the applicant's job application or conduct during his interview.[19] Because River Oaks' burden at this stage is one of "production," not proof, *see West v. Nabors Drilling USA, Inc.*, 350 F.3d 379, 385 (5th Cir. 2003), the burden again shifts to Lopez to demonstrate by a preponderance of the evidence that River Oaks' stated reason for its decision is merely pretext for discrimination.  *See Burdine*, 450 U.S. at 253.

In order to prove that a claimed work-rule violation is pretextual, a plaintiff may establish the defendant-employer's "explanation is so 'unworthy of credence' that a jury could infer that the employer is dissembling to conceal a discriminatory purpose." *Corely v. Jackson Police Dep't*, 639 F.2d 1296, 1299 (5th Cir. 1981) (quoting *Reeves*, 530 U.S. at 143).  "Moreover, although the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, *St. Mary's Honor Ctr.*,  509 U.S. at 511, the trier of fact may still consider the evidence establishing the plaintiff's *prima facie*, case 'and inferences properly drawn therefrom . . . on the issue

---

[19]     River Oaks appears to rely on the at-will employment doctrine as dispositive of this entire matter.  However, this doctrine is not without limits; it cannot be used to protect an employer who is motivated by unlawful discriminatory animus.  *See, e.g.*, *Fadeyi v. Planned Parenthood Ass'n*, 160 F.3d 1048, 1049–50 (5th Cir. 1998).

of whether the defendant's explanation is pretextual,' *Burdine*, 450 U.S. at 255 n.10."
*Reeves*, 530 U.S. at 143.

In support of her position that River Oaks' explanation for its decision to
rescind its job offer is pretextual, Lopez has offered evidence that River Oaks'
decision was motivated by sex discrimination, as contemplated by *Price Waterhouse*,
rather than by its articulated explanation that Lopez was deceptive during the
interview process.  Specifically, Lopez has presented evidence that she was officially
offered the Scheduler position by Elle Pallugna only after Pallugna obtained the
results of Lopez's background check and drug screen, which revealed no problems.[20]
Only thereafter did River Oaks' Human Resources Manager, Cherrone French, claim
to have identified the alleged inconsistency between Lopez's background check,
which listed her as male, and Lopez's appearance, which was later described as
"female."[21] Given uncontroverted evidence of record that Pallugna formally offered

---

[20]    *See* Plaintiff's MPSJ [Doc. # 21], Exh. III.1: "Elle Pallugna Deposition Transcript,"
at 72–73, 79.

[21]    As noted previously, while River Oaks contends it was concerned about Lopez's
supposed inconsistent use of her adopted and legal names, there is no evidence that
this was a concern at the time River Oaks decided to rescind its job offer.  In addition
to the letter from River Oaks rescinding Lopez's job offer, River Oaks' employees
have testified during their depositions that the issue motivating the company's
decision was the issue of Lopez's sex.  Moreover, if the issue of Lopez's name in fact
motivated River Oaks' decision, it is notable that upon learning of the problems with
Lopez's file, Cherrone French, rather than immediately concluding that Lopez had
misrepresented herself as alleged, instead sought to determine whether Lopez "looked
(continued...)

the Scheduler position to Lopez after receiving the results of Lopez's background check and drug screen, French's claim that Pallugna approached her with concerns about this inconsistency in Lopez's paperwork at best raises a fact issue for trial.[22]

Lopez has also offered evidence that French was belatedly concerned about Lopez's appearance after Lopez approached Elle Pallugna and Maddy Williams to

---

[21]     (...continued)
like" a man.  If it is true, as River Oaks claims, that the company has a consistent policy of rescinding job offers to any applicant who misrepresents himself during the interview process, and if River Oaks' decision was based on inconsistencies with her name, rather on issues concerning Lopez's sex, then it is unclear why follow up inquiries about Lopez's appearance were necessary or even relevant. Lopez is entitled to rely on River Oaks' conduct in this regard to demonstrate pretext.

[22]     *See* Plaintiff's MPSJ [Doc. # 21], Exh. IV.1: "Cherrone French Deposition Transcript," at 36.  Pallugna claims that she provided French with Lopez's paperwork upon French's request.  *See id.*, Exh. III.1: "Elle Pallugna Deposition Transcript," at 81–82.

inquire about the subject.[23]  French learned that Lopez presented as "female," or at least consistent with French's stereotypical notions of how a female would appear,[24] and only thereafter made the decision to rescind the job offer.  French testified she would not have made this decision had Lopez appeared sufficiently masculine—or even so androgynous so as to make her gender undeterminable based on appearance alone.[25]  In addition, Lopez has presented evidence that French believes transgendered persons to be deceptive, which is probative of French's motivation to seek rescission of Lopez's job offer.[26]  In sum, this evidence is sufficient to demonstrate that there is

---

[23]     *See* Plaintiff's MPSJ [Doc. # 21], Exh. IV.1: "Cherrone French Deposition Transcript," at 37, 47; Defendant's Response [Doc. # 27], Exh. F: "Cherrone French Deposition Transcript," at 59.  It is not clear why French did not approach Tameka Dixon, who has admitted to knowing Lopez's actual sex during the interview process.  Whether French should have spoken to Dixon, and how that may have impacted River Oaks' decision cannot be resolved on the record before the Court.  *See* Plaintiff's Reply [Doc. # 32], Supp. Appx.:  "Cherrone French Deposition Transcript," at 93 (stating that Lopez "never told any of us—she didn't tell the recruiter, the manager, or the director that she interviewed, any of those people, that, oh, by the way, when you do the background check, it may come back as male because I'm transgender.").  This question will likely be relevant to a jury asked to determine whether River Oaks' stated reason for rescinding its job offer was pretextual.  *See Corley v. Jackson Police Dep't*, 639 F.2d 1296, 1298 (5th Cir. 1981) ("[A] mistaken but good-faith belief that an employee has violated the employer's rule is sufficient to rebut the *McDonnell Douglas* inference that the employee was [subjected to an adverse employment action] for impermissible reasons.").

[24]     *See* Plaintiff's MPSJ [Doc. # 21], Exh. IV.1: "Cherrone French Deposition Transcript," at 47–54.

[25]     *See id.*, at 86.

[26]     *See id.*, at 91.

a genuine fact issue whether River Oaks' stated reasons for rescinding its job offer were pretext for unlawful discrimination.

However, in response to Lopez's request for summary judgment, River Oaks has presented sufficient evidence to raise a question of fact on this issue. The River Oaks employees involved with the hiring decision at issue have consistently testified that Lopez's sex was irrelevant to that decision and that the concern instead was their belief that she had misrepresented herself during the interview process.[27] Thus, there is a genuine fact issue whether Lopez's actual sex was of any consequence to River Oaks.[28] There also is a genuine question of fact whether Lopez's gender nonconformance actually motivated the company's decision to rescind its job offer. These issues cannot be decided on the summary judgment record, in part because resolution would depend on credibility determinations, which a court must not make on summary judgment. *See Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). It will be up to a factfinder to conclude whether River Oaks' used impermissible sex stereotyping in rescinding Lopez's job offer. Summary judgment for either party is unwarranted.

---

[27]   *See* Defendant's Response [Doc. # 27], Exh. E: "Elle Pallugna Deposition Transcript," at 98–101, 128, 139; Exh. F: "Cherrone French Deposition Transcript," 198–202; *see also id.*, Exh. B: "Tameka Dixon Deposition Transcript," at 92–93; Exh. C: "Maddy Williams Deposition Transcript," at 84–85.

[28]   *See, e.g.*, *id.*, Exh. F: "Cherrone French Deposition Transcript," at 138–42.

IV.    **CONCLUSION**

Because Lopez has not argued that transgendered individuals are entitled to Title VII protection *per se*, the Court deems that argument waived.  To the extent Lopez's claim relies on that theory, it is dismissed.  The Court concludes, applying Title VII as written and interpreted by the United States Supreme Court, that Lopez has stated a legally viable claim of discrimination as a male who failed to conform with traditional male stereotypes.  The parties both have presented evidence sufficient to defeat the opponent's summary judgment motion and Lopez may proceed with her gender nonconformance claim, consistent with the rulings herein.  Accordingly, it is hereby

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment [Doc. # 21] is **DENIED**.  It is further

**ORDERED** that Defendant's Motion for Final Summary Judgment [Doc. # 23] is **DENIED**.  It is further

**ORDERED** that Defendant's Motion to Strike Plaintiff's Evidence in Plaintiff's Motion for Partial Summary Judgment [Doc. # 28] is **DENIED AS MOOT**.

Despite River Oaks' counsel's patent and unnecessary hostility towards Lopez's attorneys, who are affiliated with the public interest organization, Lambda Legal

Defense and Education Fund, Inc.,[29] the parties have indicated that they are willing to engage in mediation to settle this matter.[30]  In order to provide the parties ample time to engage in meaningful settlement negotiations, it is further

**ORDERED** that deadlines set in the Scheduling Order currently in place [Doc. # 36] will be extended and the following deadlines will apply:

| | |
|---|---|
| Mediation | April 30, 2008 |
| Joint Pretrial Order | May 14, 2008 |
| Docket Call (4:00 p.m.) | May 20, 2008 |

**SIGNED** at Houston, Texas, this 3<u>rd</u> day of **April, 2008**.

Nancy F. Atlas
United States District Judge

---

[29]   *See* Defendant's MSJ [Doc. # 23], ¶ 20 n.2; Defendant's Response [Doc. # 27], ¶ 13, ¶¶ 16–17, ¶ 35 n.6; Defendant's Reply to Plaintiff's Response to Defendant's Motion for Final Summary Judgment [Doc. # 34], ¶ 4 n.2, ¶ 17.

[30]   *See* Plaintiff's Response [Doc. # 29], at 4 n.2.